IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>$265,103.00 UNITED STATES CURRENCY, and, 2016 CHEVROLET SILVERADO PICK-UP TRUCK (VIN 1GCVKREC9GZ237499),<br><br>    Defendants. | Civil No. 8:20CV 446<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $265,103 U.S. currency and a 2016 Chevrolet Silverado pick-up truck (VIN 1GCVKREC9GZ237499) seized by law enforcement on April 10, 2020.

3. The U.S. Customs and Border Protection (CBP) currently has custody of the defendant property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

12.    Sheriff Vance saw that the black Chevrolet Silverado pick-up truck failed to signal 100 feet before its lane change.

13.    Sheriff Vance then saw the black Chevrolet Silverado pick-up truck start to pass the semi-trailer truck, but then slow down drastically in the passing lane, allowing the semi-trailer truck to pull away from the pick-up truck.

14.    Based on his training and experience, Sheriff Vance believed that such a sudden change in driving behavior often occurs once a driver sees a police vehicle and is an indicator of possible involvement in criminal activity.

15.    Sheriff Vance saw the pick-up truck again change lanes without a signal within the necessary 100 feet.

16.    Sheriff Vance stopped the black Chevrolet Silverado pick-up truck with an Illinois license plate near the 373 west bound mile marker for changing lanes in violation of Nebraska traffic laws.

17.    Sheriff Vance approached the truck, passenger side window, and saw several air fresheners inside the truck.

18.    Based on his training and experience, Sheriff Vance believed that multiple air fresheners indicate a driver's attempt to cover-up the odor of illegal drugs.

19.    The driver and sole occupant of the truck provided an Illinois driver's license identifying him as Ryan Omar Edwards, with an address in Chicago, Illinois.

20.    Edwards said he got out of the Army in 2013, served at Walter Reed in D.C., was a nurse, initially was a medic for the first four years with the 82nd Airborne, and deployed to Afghanistan.

21.    Sheriff Vance has prior military experience and believed that Edwards was claiming a different field and Military Occupational Specialty (MOS).  Sheriff Vance believed that because

3

32.     On his patrol screen, Sheriff Vance also reviewed a utility bill for an apartment in Los Angeles paid by Rosalyn Sinclair.

33.     As a result, Sheriff Vance believed that Edwards' mother was living in Los Angles and not in Denver.

34.     Sheriff Vance concluded that Edwards was untruthful about his reason for his trip.

35.     Dispatch also reported that Edwards had a prior criminal record.[1]

36.     Sheriff Vance returned to Edwards' truck and asked Edwards to walk back to his patrol vehicle and Edwards complied.

37.     Sheriff Vance explained the warning to Edwards and Edwards signed the warning.

38.     Sheriff Vance told Edwards that he was free to go.

39.     Sheriff Vance then asked Edwards if he could ask him a few questions and Edwards said, "Yeah."

40.     When asked whether there were weapons in the truck, Edwards answered "no" to while looking at Sheriff Vance.

41.     When Sheriff Vance asked Edwards whether there were large amounts of currency in his vehicle, Edwards looked back towards the truck and replied "no" more quietly.

42.     Based on his training and experience, Sheriff Vance believed Edwards' answer regarding currency was deceptive, and therefore indicated criminal activity.

43.     Sheriff Vance requested Edwards' consent to search the truck.

44.     When asked for consent to search the truck, Edwards asked if Sheriff Vance would search the entire vehicle.

---

[1] After the search and retuning to headquarters, law enforcement later learned that Edwards did not, in fact, have criminal history and such was erroneously reported by dispatch.

45.   Edwards took a long pause when asked to consent to a search of the truck.

46.   Edwards said no, thereby denying consent to search the truck.

47.   Based on the conversation and the information gathered, Sheriff Vance noted several

indicia of criminal activity, including:

> (1) sudden change in driving behavior;
> (2) multiple air fresheners in the truck;
> (3) Edwards' attempts to engage in small talk with Vance indicating an attempt to distract Vance;
> (4) inconsistencies in Edwards' story regarding military service in the army and the 82nd airborne;
> (5) logging 17,000 miles on the truck in a few months;
> (6) Edwards provided inconsistent answers with respect to the purpose of his trip regarding visiting his mother in Denver when information showed that she lived in California;
> (7) Dispatch report of a prior criminal history; and,
> (8) Edward's inconsistencies in body language (eye movement) when responding to questions about whether the vehicle contained firearms, large amounts of currency or drugs.

48.   Sheriff Vance deployed his drug detection canine around the truck.

49.   The dog gave a positive indication to the rear driver's side door of the truck.

50.   Law enforcement searched the truck, and inside the passenger compartment, on the floor

behind the driver's seat, law enforcement found a large blue duffle bag that contained four large

vacuum-sealed packages of U.S. currency. *See* **Exhibit 1**, attached hereto.

51.   Also inside the blue duffle bag was a white plastic bag, which contained two smaller

vacuum-sealed bundles of U.S. currency.

52.   Law enforcement also found a small suitcase also containing U.S. currency in the truck.

53.   The currency was vacuum-sealed.

54.   Sheriff Vance also found energy drinks in a white bag.

55.     Law enforcement also found a piece of notebook paper with several addresses in Georgia and mileage notations form each of the cities listed.  *See* **Exhibit 2**, attached hereto.  The mileage would seem to suggest distance to drive from the Georgia locations to Colorado.

56.     Sheriff Vance asked Edwards if the currency in the truck belonged to someone else for whom he was transporting it, and Edwards responded by nodded his head – indicating yes.

57.     Sheriff Vance read Edwards his Miranda rights and Edwards invoked the Fifth Amendment.

58.     Sheriff Vance stopped speaking with Edwards and placed Edwards under arrest.

59.     Sheriff Vance called Homeland Security Investigations (HSI) Special Agent Andrew Vincik regarding the seizure.

60.     Law enforcement seized the truck, the currency, two cell phones, and an iPad.

61.     Law enforcement counted the seized currency and found a total of $265,103.

62.     The currency had a strong chemical smell.

63.     Law enforcement took photos of the currency.  *See* **Exhibit 3**, attached hereto.

64.     Over $230,000.00 of the currency was in $20 bills.

65.     Law enforcement tested the currency.  The test indicated the presence of cocaine on the currency.  *See* **Exhibit 4,** attached hereto.

66.     Sheriff Vance later reviewed video recordings of the encounter with Edwards, and saw Edwards place something under the center console in Vance's patrol vehicle while Edwards was sitting in the front passenger seat.

67.     Sheriff Vance searched his patrol vehicle's center console and found a small piece of wax paper which contained a personal use amount of THC hashish wax.

7

68.     SCSO transferred custody of the seized currency and Edwards' truck to HSI.

69.     The state of Nebraska, Seward County Prosecutor, is prosecuting Edwards for violations of Nebraska law, with trial scheduled for November.

70.     On June 4, 2020, U.S. Customs and Border Protection (CBP) received two claims from David Martin Michael, Esq., an attorney with offices in San Francisco, California, on behalf of Ryan Edwards for the $265,103 and the 2016 Chevrolet Silverado pick-up truck.

71.     On the claim forms, Edwards asserted that he "is the owner of and ha[s] a possessory interest in, and the right to exercise dominion and control over, the [seized] property."

### Claim for Relief

WHEREFORE the United States of America prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney, District of Nebraska

By:

Amy B. Blackburn (MO#48222)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
(402) 661-3700
amy.blackburn@usdoj.gov

8

## **VERIFICATION**

I, Andrew Vincik hereby verify and declare under penalty of perjury that I am a Special Agent with the U.S. Homeland Security Investigations (HSI), that I have read the foregoing Complaint *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 71 of the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of HSI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: October 23rd, 2020

Andrew Vincik
Special Agent
U.S. Homeland Security Investigations

9





GOVERNMENT
EXHIBIT
1



GOVERNMENT
EXHIBIT

3





GOVERNMENT
EXHIBIT

4